|  |  |
|---|---|
| HERMAN T. HAYNES, CDCR #J-69292, <br><br> Plaintiff, <br><br> v. <br><br> JUAREZ; A. AGUIRRE; H. ASBURY; A. SHEPARD; P. BRACAMONTE; M. BELMARES; TORRES, <br><br> Defendants. | Case No.: 19-cv-2380-BAS-MSB <br><br> **(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2];** <br><br> **(2) DISMISSING FOURTEENTH AMENDMENT CLAIMS;** <br><br> **AND** <br><br> **(3) DISMISSING DEFENDANTS JUAREZ, AGUIRRE, BRACAMONTE, AND BELMARES** |

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

Herman T. Haynes ("Plaintiff"), proceeding *pro se* and currently incarcerated at Mule Creek State Prison ("MCSP") located in Ione, California, has filed a Complaint pursuant to 42 U.S.C. § 1983 (ECF No. 1), together with a Motion to Proceed *In Forma Pauperis* ("Motion for IFP"). (ECF No. 2.) Plaintiff claims prison officials at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, violated his Fourteenth and Eighth Amendment rights when he was previously housed there in 2018. (*See* Compl. at 1.)

For the reasons stated below, the Court **GRANTS** Plaintiff's Motion to Proceed IFP; **DISMISSES** Plaintiff's Fourteenth Amendment claims; and **DISMISSES** Defendants

Juarez, Aguirre, Bracamonte, and Belmares because Plaintiff failed to state any claim against them under 28 U.S.C. § 1915(e)(2) and § 1915A(b).

**I.      MOTION TO PROCEED IFP**

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. §§ 1915(b)(1), (4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his Motion, Plaintiff has submitted a copy of his CDCR Inmate

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

Statement Report, as well as a prison certificate of funds authorized by a MCSP accounting official. (Mot. for IFP at 4, 8–9.) *See* 28 U.S.C. § 1915(a)(2); CivLR 3.2; *Andrews*, 398 F.3d at 1119. These records demonstrate that Plaintiff's account balance was only $0.09 at the time his Complaint was filed on December 11, 2019.

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP and assesses no initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1). *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). Instead, the Court will direct the $350 total filing fee owed in this case be collected by the agency having custody of Plaintiff and forwarded to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(2).

## II. SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A

### A. <u>Standard of Review</u>

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b) . Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citations omitted.)

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of

Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Finally, in deciding whether Plaintiff has stated a plausible claim for relief, the Court may consider exhibits attached to his Complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss.)).

### B. Plaintiff's Factual Allegations

On February 2, 2018, Plaintiff was transferred to RJD. (*See* Compl. at 4.) When Plaintiff arrived at RJD he "started having suicidal ideations and was placed on suicide watch." (*Id.*) Plaintiff was told he would be going to "A Yard" but was placed in the administrative segregation unit ("ASU") later that night. (*Id.*) The following morning Plaintiff was sent to the "Treatment and Triage Area" where he was housed for eighteen days. (*Id.*)

On February 20, 2018, Plaintiff was told by "Sgt. Kong"[2] that he was being sent to the ASU "because he had an enemy on A-Yard." (*Id.* at 5.) Later that day, Lieutenant Asbury told Plaintiff that he "would be going to C-Yard." (*Id.*) However, Plaintiff told Asbury that he could not go to C-Yard "because he was not SNY." (*Id.*) Asbury responded that it "did not matter because [Plaintiff] was E.O.P." (*Id.*) Plaintiff, a "Level 3" inmate, objected to being transferred to a "Level 4" yard. Plaintiff asked to be sent to a "Level 2" yard because he had "over a year disciplinary free" but was "ignored" by Asbury. (*Id.*)

Plaintiff was sent to C-Yard. (*See id.*) Plaintiff was in his cell "for approximately 20 minutes" when a "Mexican inmate came to his cell and asked if he was GP (general population)." (*Id.*) Plaintiff responded in the affirmative. (*See id.*) This inmate "walked away" from Plaintiff's cell. (*Id.*) Plaintiff alleges that "[w]ithin minutes over 15 Black inmates were at Plaintiff's cell door telling him that they were going to kill him" when he leaves his cell. (*Id.*) At some point, "there were so many inmates in front of Plaintiff's cell door that C/O Torres had to put the dayroom down to gain control and lock all of the inmates up in their cells." (*Id.*)

After the inmates returned to their cells, Plaintiff "called C/O Torres to his cell door and told him what had just occurred and that [Plaintiff] was in fear for [his] safety." (*Id.*) Plaintiff further informed Torres that the "inmates were displaying knives as they threatened [him] and one of the inmates told [him] not to be there in the morning." (*Id.*) Torres told Plaintiff that he "should tell the first watch officer when he arrives." (*Id.*)

Plaintiff "stayed awake all night waiting for the first watch officer." (*Id.* at 5, 8.) Plaintiff "told the officer about everything that transpired" and the officer "told the Plaintiff that there was nothing he could do but cap [his] cell and let second watch know." (*Id.* at 8.) Plaintiff then told "C/O Briones and C/O Lizareno"[3] what had happened the previous night and that he "feared for his safety and he needed to get off that yard." (*Id.*) Briones and Lizareno "told Sgt. Shepard what [Plaintiff] said." (*Id.*) Sergeant Shepard interviewed

---

[2] Sergeant Kong is not a named Defendant.
[3] Correctional Officers Briones and Lizareno are not named Defendants.

Plaintiff and "took [his] statement." (*Id.*)

On that same day, the "cap was taken off of [Plaintiff's] cell door" and he was "sent out to the yard with the same inmates who had threatened [him]." (*Id.*) Three days later, Plaintiff was assigned a cellmate who was "also a GP inmate" and he was having "similar problems with SNY inmates." (*Id.*) Both Plaintiff and his cellmate "tried to tell [they] feared for [their] safety at every chance, but it fell on deaf ears." (*Id.*)

On March 8, 2018, Plaintiff and his cellmate were "walking out of the building on [their] way to chow" when they were "attacked by approximately 20 SNY inmates." (*Id.*) Plaintiff was "tripped in an area outside the building that is a blind spot for staff posted in observation areas." (*Id.*) Plaintiff was "unable to get off of the ground where he was being stomped and kicked on the ground." (*Id.*) Plaintiff's cellmate was able to "run into an area where staff could see him" and officers then responded. (*Id.*) Plaintiff alleges "two SNY inmates were caught with weapons that night." (*Id.*) Plaintiff's cellmate suffered "cuts on his arms from weapons used to try to stab him." (*Id.*) Plaintiff had "cuts on his mouth and a chipped tooth." (*Id.*)

### C. **Analysis**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035-36 (9th Cir. 2015).

Because Plaintiff was a post-conviction prisoner at the time his claims arose,[4] it is the Eighth Amendment's proscription on cruel and unusual punishments, and not the Fourteenth Amendment, that provides the framework for his failure-to-protect claims. *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016) ("Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth

---

[4] Plaintiff alleges he was confined at RJD at the time his claims arose. (Compl. at 4.) RJD is a state prison that houses only inmates serving sentences after conviction.

6

Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause.") (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Therefore, the Court dismisses Plaintiff's Fourteenth Amendment claims and analyzes his allegations only under the Eighth Amendment. *Id.*

A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 833, 837 (1994). "In other words, the official must demonstrate a subjective awareness of the risk of harm." *Conn v. City of Reno*, 591 F.3d 1081, 1096 (9th Cir. 2010), *cert. granted and judgment vacated*, 563 U.S. 915 (2011), *opinion reinstated in relevant part*, 658 F.3d 897 (9th Cir. 2011).

1. Individual Liability of Juarez, Aguirre, Bracamonte, and Belmares

With respect to Associate Warden Juarez, Captain Aguirre, Captain Bracamonte, and Sergeant Belmares, Plaintiff claims only that they are "responsible for inmates['] safety and to protect them from harm." (Compl. at 9–11.) However, Plaintiff fails to state a plausible claim for Eighth Amendment relief against these Defendants because he does not include any "further factual enhancement" to describe how, when, or whether any of them were personally aware that Plaintiff faced a substantial risk of serious harm. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

There is no respondeat superior liability under 42 U.S.C. § 1983. *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993). "Because vicarious liability is inapplicable to ... § 1983 suits, [Plaintiff] must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 at 676; *see also Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even *pro se* plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim). "A plaintiff must allege facts, not simply conclusions, t[o] show that [each

defendant] was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see also Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) ("Causation is, of course, a required element of a § 1983 claim.").

As currently pleaded, Plaintiff's Complaint offers no factual detail from which the Court might reasonably infer a plausible claim on the part of Associate Warden Juarez, Captain Aguirre, Captain Bracamonte, or Sergeant Belmares. *Iqbal*, 556 U.S. at 678. Instead, Plaintiff includes these Defendants based solely on their supervisory job descriptions and claims generally that they are responsible for ensuring the overall safety of the facility. (*See* Compl. at 9-11.) But the law "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 662 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 570). Allegations that a prison official "should have been aware of [a] risk, but was not," simply do not amount to an Eighth Amendment violation, "no matter how severe the risk.'" *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) (citations omitted).

Therefore, the Court dismisses Associate Warden Juarez, Captain Aguirre, Captain Bracamonte, or Sergeant Belmares *sua sponte* based on Plaintiff's failure to state Eighth Amendment claims against them. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

2. Failure-To-Protect Claims Against Asbury, Shephard, and Torres

Plaintiff raises claims against Defendants Asbury, Shepard, and Torres for failing to take reasonable measures to prevent Plaintiff from imminent harm under the Eighth Amendments. (Compl. at 4.) The Court finds Plaintiff's allegations sufficient to survive the "low threshold" set for *sua sponte* screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678. Specifically, Plaintiff alleges that he informed these Defendants about threats to his physical safety before he was attacked, but that Defendants did not take reasonable measures to address them. *See* Compl. at 4–5, 8; *U.S. v. Williams*, 842 F.3d 1143, 1153 (9th Cir. 2016) (the Eighth

8

Amendment "requires that prison officials 'must take reasonable measures to guarantee the safety of the inmates.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 833, 847 (1994) ("[P]rison officials have a duty [under the Eighth Amendment] . . . to protect prisoners . . ." and therefore, "may be held liable … if [they] know[] that inmates face a substantial risk of serious harm and disregard[] that risk by failing to take reasonable measures to abate it.").

3. Leave to Amend

Because the Court has determined that some of Plaintiff's claims survive the *sua sponte* screening process, the Court will give Plaintiff the opportunity to either: (1) notify the Court of the intent to proceed with his Eighth Amendment claims against Defendants Asbury, Shepard, and Torres only; or (2) file an amended pleading correcting all the pleading deficiencies identified by the Court in this Order. Plaintiff must choose one of these options within forty-five (45) days from the date this Order is filed. If Plaintiff chooses to proceed as to his claims against Defendants Asbury, Shepard, and Torres, the Court will issue an Order directing the U.S. Marshal to effect service of his Complaint on Defendants Asbury, Shepard, and Torres and dismiss the remaining claims and Defendants.

## III. CONCLUSION AND ORDER

For all the reasons discussed, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2).

2. **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the full $350 filing fee owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). **ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.**

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DISMISSES** Plaintiff's Fourteenth Amendment claims.

5. **DISMISSES** Defendants Juarez, Aguirre, Bracamonte, and Belmares because Plaintiff failed state claims against them pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

5. **GRANTS** Plaintiff **forty-five (45) days** leave from the date of this Order in which to either: (1) notify the Court of the intention to proceed with the claims against Asbury, Shepard, and Torres only; or (2) file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. *See* CivLR 15.1; *Hal Roach Studios*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original."); *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

**IT IS SO ORDERED.**

**DATED: February 11, 2020**

Hon. Cynthia Bashant
United States District Judge